Harold Tessler, J.
Defendant moves to dismiss the complaint on the ground that the pleading fails to state a cause of action (CPLR 3211, suhd. [a], par, 7).
Defendant is a corporation duly organized and existing under the provisions of article II of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd.) for the purpose, among other things, of holding harness races at which pari-mutuel betting is conducted. Defendant is subject to the jurisdiction and rules and regulations of the State Harness Racing Commission. Pursuant to section 102.38 of said rules defendant is authorized to conduct a “ Twin Double ”, which is a comparatively new form of parimutuel wagering. The bettor must select four winner of four designated races by first purchasing a ticket designating two winners and thereafter exchanging it for a second ticket designating two other winners. Section 102.38 (suhd, [h], par. [4]) of the aforesaid rules provides that: “ If no exchange ticket is issued combining the winners of the third and fourth twin double races, or the fourth twin double race is cancelled or declared ‘ no race ’, the net pool shall be distributed to holders of exchange tickets designating the winner of the third twin double race.” (19 NYCRR 102.38 [h] [4].)
On September 3,1963, defendant conducted a program of nine harness races and a “ Twin Double ” on the fifth, sixth, eighth and ninth races. Plaintiff participated in the “ Twin Double ” and purchased a two-dollar pari-mutual ticket, successfully selecting the winners of the fifth and sixth races. He exchanged it for another ticket successfully selecting the winner of the eighth race. At this pint there were 10 others who also suecessfullly selected the winners of the fifth, sixth and eighth races. Plaintiff, however, was the only one who had designated the Mo, & horse in the ninth with the result that if the latter horse won that race, plaintiff’s two-dollar ticket would have returned a record payoff of $105,338.20. This happy event never occurred. In fact, none of the 10 others won, which set up the consolation “ Twin Double ” — the net pool being distributed to the 11 holders (including plaintiff) of exchange tickets designating, the winner of the eighth race. Accordingly,, each of the 11 holders was to receive the sum of $9,576.20.
At the conclusion of racing that night defendant made payment on 6 of these 11 “ Twin Double ” pari-mutuel tickets. Later that same night “ the said ticket held by the plaintiff'was forcibly withheld from him by a person, whose name is unknown to the. plaintiff and wrongfully and unlawfully taken from plaintiff’s possession and converted by said person who refused to. return the same to the plaintiff although the plaintiff demanded *55 the return thereof from the said person.” This occurred in White Plains — some distance from the race track.
On September 4, 1963, the following day, and prior to the presentation of said ticket for payment by the unknown person, plaintiff notified defendant and its special police officers of the aforesaid occurrences and demanded that payment of said ticket be withheld so as to afford him an opportunity to establish his rightful ownership to it. Despite this notice and the further fact that plaintiff’s ticket was readily identifiable since it was the only one designating the No. 5 horse in the ninth race, no action was taken by either the defendant or its special police force. During that evening payment was made on the remaining five “Twin Double” tickets, including the one plaintiff claimed to have been taken from him. Although defendant had obtained the name and address of the person who presented plaintiff’s ticket for payment, it refused to disclose his identity to plaintiff despite the latter’s pleas. As a result of the foregoing, plaintiff claims damages of $9,576.20, the amount paid out on the winning ticket.
For the purposes of this motion the court, as it must, assumes the foregoing facts as alleged in the complaint to be true together with those undisputed facts contained in the affidavits, which are now permissible under the new procedural rules (CPLR 3211, subd. [c]). The question presented is: Did plaintiff’s notice to defendant of the circumstances surrounding his “ loss ” of the ticket create and/or impose a duty upon it to withhold payment on the winning ticket so as to afford plaintiff an opportunity to establish his ownership?
Section 43 of article II of the Pari-Mutuel Revenue Law requires defendant to execute and file a bond that it will, among other things, “distribute to the patrons of pari-mutuel pools conducted by it all sums due upon presentation of winning tickets held by them, and that it will otherwise comply with all of the provisions of this act and with the rules and regulations prescribed by the state harness racing commission and the state tax commission.” (L. 1940, ch. 254, as amd. by L. 1957, ch. 357, §2.) Section 45 states that defendant “ shall distribute all sums deposited in any pari-mutuel pool to the holders of winning tickets therein, provided such tickets be presented for payment before April first of the year following the year of their purchase, less the following percentages of the total deposits, plus the breaks: * * * fifteen per centum.” (L. 1940, ch. 254, as amd. by L. 1963, ch. 267.) Section 53 states that the “ sum held by any corporation or association authorized to conduct pari-mutuel betting for payment of outstanding winning pari *56 mutuel tickets and for refunding the price of pari-mutuel tickets shall be retained by such corporation or association for such purposes until April first of the succeeding year. Within ten days thereafter, the balance of such sum remaining unclaimed and any other unclaimed amount received in the course of conducting pari-mutuel betting shall be paid to the state tax commission ”. (L. 1940, ch. 254, as amd. by L. 1957, ch. 447, § 6.) Subdivision (b) of section 102.15 of the Rules and Regulations of the State Harness Racing Commission provides that ‘ ‘ Payments on all winning pari-mutuel tickets and tickets refundable according to rules shall be made only on presentation and surrender of appropriate ticket. Mutilated tickets and those whose validity are questioned shall be submitted to the New York State Tax Commission for inspection.” (19 NYCRR 102.15 [b].)
A reading of all of these applicable provisions compels the conclusion that defendant is precluded from making payment — and plaintiff cannot demand payment — absent a presentation and surrender of the winning ticket. (Carr v. State of New York, 30 Misc 2d 983, affd. 15 A D 2d 709; Aliano v. Westchester Racing Assn., 265 App. Div. 225; Shapiro v. Queens County Jockey Club, 184 Misc. 295; Holberg v. Westchester Racing Assn., 184 Misc. 581.) However, it is to be noted that in these cases there was either (1) an abiding inability on the part of a patron to present an existing ticket since it had been inadvertently destroyed or (2) the ability to present a ticket, but not the winning one. Neither of these situations is here present.
Payment and demand for payment are, therefore, conditional. There is no mandatory provision requiring defendant to make payment upon presentation and surrender of a winning ticket under any or all circumstances, nor can I find such a requirement by implication. In fact, although not directly related to the instant situation, when questions with respect to the mutilation or validity of a ticket arise, the ticket “ shall be submitted to the New York State Tax Commission for inspection.” (Rules and Regulations, § 102.15 [b].)
Plaintiff’s claim is based upon defendant’s failure to withhold payment on the winning ticket in order to give him an opportunity to establish his ownership thereto and present it for payment pursuant to the statutory requirements. I find nothing in any of the applicable statutes and rules to preclude the defendant from withholding payment at least until some inquiry was made or possibly a disposition effected respecting the true ownership of the ticket. I fail to perceive how such action by defendant would have violated its bond. It was not required to turn over the money to the New York State Tax *57 Commission since said sum was claimed and it would have been required to pay upon presentation of the winning ticket by the rightful holder, in accordance with the aforesaid provisions. (Cf. Aliano v. Westchester Racing Assn., supra.) It is of significance to note that defendant’s acts or lack of action are the very things that prevented the plaintiff from being able to present a winning ticket.
I cannot but note that the odds against a recurrence of the existing facts are about the same as were plaintiff’s chances to select four consecutive winners in the “Twin Double ”. Accordingly, it is the court’s opinion that under the singular circumstances here present plaintiff’s first cause of action is sufficient.
Plaintiff’s second cause of action is based upon an alleged breach of contract by defendant in that it failed to protect him by permitting a conversion of his ticket into the payout of $9,576.20. In view of the fact that the defendant is a creature of statute, existing only by virtue of same and limited in its scope, operation and activities by said statute, and additionally by reason of the limited jurisdiction and duties of its special policemen as set forth in section 41-d of article II of the PariMutuel Revenue Law. (L. 1940, ch. 254, as amd. by L. 1962, oh. 223). I find that under the facts alleged herein no contract can be spelled out or implied between the parties. In consequence, the second cause of action is insufficient.
Accordingly, the motion is denied as to the first and granted as to the second cause of action.