OPINION OF THE COURT
Lawrence H. Schultz, Jr., J.
The plaintiff is a patron of the defendant racetrack, located in Batavia, New York. He seeks refund of $600 for tickets which he alleges were incorrectly issued to him by defendant’s employee. The case was heard in small claims, the plaintiff representing himself, and the defendant being represented by counsel. Judgment granted to the defendant, upon the following findings of fact and conclusions of law.
FINDINGS OF FACT
(1) Plaintiff is an experienced bettor and a frequent patron at Batavia Downs racetrack, which is owned and operated by the defendant. In addition, by plaintiff’s own testimony, he frequently bets considerable amounts of *241 money at several racetracks, among them being Batavia Downs, Hamburg racetrack, and the nearby Canadian racetracks in the Province of Ontario.
(2) On the day in question, March 29,1982, he was such a patron at the Batavia Downs racetrack. Prior to the last race of the evening, being the tenth race, plaintiff approached one of the seller’s windows, in particular manned by one Peter Corbelli. The plaintiff commenced ordering from the seller, referring to a chart which he had prepared or a race form, asking for a series of combination tickets. The ticket machine, referred to as the “Tote Machine” operates in such a fashion that the track employee, by pushing certain buttons, is able to cause a particular ticket to be printed, showing the amount bet, the type of ticket issued, with the number of the particular horse or horses in the race shown thereon, and the machine operates in such a fashion that all sales are entered into a main or central computer which also affects the odds being offered by the racetrack on a particular horse or a combination of horses. The machine is so constructed that when the particular horse race commences, the machine automatically ceases to function, and no more operations may take place utilizing the machines at the seller’s windows. A computer sheet offered by the defendant at the trial demonstrated that the first sale of a ticket to the plaintiff commenced 98 seconds prior to the time that the tenth race began, that the transactions took 78 seconds to complete, and that 20 seconds were remaining before the race commenced.
(3) In that 20 seconds, upon receiving his tickets, plaintiff demanded to the seller, Mr. Corbelli, that certain tickets which he received were hot those which he had requested and that they were to be canceled. With this time remaining, Mr. Corbelli did cancel certain tickets. The “Tote Machine” showed to Mr. Corbelli that the total tickets issued amounted in all to $836. Plaintiff admitted that some of these tickets were correct and the rest were incorrect.
(4) At some point the bell rang, the tote machine ceased to function, and no more tickets could be canceled by the seller, Mr. Corbelli; the plaintiff announced to the track employee, Mr. Corbelli, that he would not pay for the *242 balance of the tickets. A mutuel manager was called by Mr. Corbelli, and a dispute followed between the plaintiff, the mutuel manager and Mr. Corbelli, the track employee. Eventually, the plaintiff did pay $780. He now sues to regain $600, seeking refund for the unwanted tickets.
(5) Testimony was given that experienced bettors often wait for the last minute or so, before a particular race begins, watching the odds given by the racetrack on the tote machine displayer, and that the purpose in so waiting, may indicate to a bettor that a given horse may win a particular race due to the fact that the odds on a particular horse diminish.
(6) There was additional testimony that defendant’s employee, Mr. Corbelli, had many, many years of experience as a seller of tickets and was not known to make mistakes.
(7) The rules and regulations governing the purchase and cancellations of tickets are posted in the area of the seller’s windows; the rules and regulations in more detail are published in the official program. In addition, a bettor of the plaintiff’s experience is well aware that all sales are final once the bettor leaves the seller’s window, and that while the seller, the racetrack employee, may cancel tickets which were improperly issued, once the race begins, and the tote machine is locked for that particular race, no further tickets may be canceled or sold.
CONCLUSIONS OF LAW
(1) Plaintiff has no cause of action against the defendant racetrack. There is no wagering contract or bet between the bettor and the racetrack, inasmuch as under the Pari-Mutuel Revenue Law (L 1940, ch 254, as amd) the racetrack operates only as a stakeholder. The normal conditions of contract, or sales contracts, do not apply. (Holberg v Westchester Racing Assn., 184 Misc 581 [App Term, 1st Dept].) Rather, the entire transaction is between the participants in the pari-mutuél pool. In addition, any other alleged contract between the plaintiff and any other party, such as the racetrack or the seller’s employee, is prohibited under the New York Constitution and the Penal Law. (See, also, Aliano v Westchester Racing Assn., 265 App Div 225.)
*243 (2) In addition, the plaintiff has no additional cause of action either against this defendant or the employee of the racetrack, he having assumed the risk of waiting until the last minute, or more, to make complicated betting transactions at the seller’s window. By waiting until these last 98 seconds prior to the commencement of the tenth race, asking for a complicated series of tickets and then seeking refunds on those which he allegedly did not wish to retain, and by running out of time to cancel these tickets, the plaintiff cannot be heard to seek a refund.
(3) If the plaintiff did not know, he is certainly presumed to have the knowledge that all sales are final when the race begins, and no unwanted ticket could be returned or rescinded. The plaintiff did assume the risk and must therefore bear the loss.
JUDGMENT
Now, it is therefore ordered and adjudged that the plaintiff’s complaint is dismissed for the reasons set forth in the decision.