OPINION OF THE COURT
Pasquale Bifulco, J.
The defendant has made a motion for summary judgment upon the ground that the complaint fails to state a cause of *4 action. In this action, plaintiff seeks to recover on two daily double pari-mutuel tickets he allegedly purchased on the eighth and ninth races at Aqueduct Race Track on May 4, 1986. The defendant, the New York Racing Association, Inc. (hereinafter NYRA) allegedly experienced an unprecedented massive computer failure at Aqueduct shortly before the ninth race (of the day) was scheduled to begin. The computer failure allegedly rendered NYRA’s tote system totally inoperative, and efforts to restore it were unsuccessful. Because pools could not be compiled nor odds computed, the Stewards conferred and decided to cancel betting on the ninth race and to conduct the race for horseman’s purse only and to award a consolidation payment to holders of late daily double tickets who had selected the winning horse in the eighth race. NYRA is a nonprofit racing association established pursuant to the New York Racing, Pari-Mutuel Wagering and Breeding Law, for the purpose of owning, operating and conducting thoroughbred racing at three tracks in this State: Aqueduct, Belmont Park and Saratoga. (Racing, Pari-Mutuel Wagering and Breeding Law § 202.) Nearly every important aspect of NYRA’s operations is prescribed and governed by that statute or by the Rules and Regulations of the New York State Racing and Wagering Board (the Board) (9 NYCRR 4000.1 et seq. [Racing Rules]) promulgated pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 101.
Pari-mutuel betting differs from other types of betting in that the betting transaction is not between the bettor and the racetrack, but between the bettor and all other bettors. The racing association is merely a stakeholder as regards parimutuel funds: collecting bets, deducting the tax, and distributing the pari-mutuel pools. In pari-mutuel betting, all the money wagered on the horses in a race to win, less a fixed percentage of the total deposits, yields a "net pool” which is paid over to those persons betting upon the successful horse. Under the pari-mutuel system, every person who makes a bet at a racetrack becomes a bookmaker for every other bettor. The winnings are paid out of the pool which he helped create. (Salmore v Empire City Racing Assn., 123 NYS2d 688 [1953]; Aliano v Westchester Racing Assn., 265 App Div 225 [2d Dept 1942]; Holberg v Westchester Racing Assn., 184 Misc 581 [Sup Ct, App Term, 1st Dept 1945]; Hochberg v New York City Off-Track Betting Corp., 74 Misc 2d 471 [Sup Ct, NY County 1973], affd 43 AD2d 910 [1st Dept 1974]; Aiello v Queens County Jockey Club, 208 Misc 445 [Sup Ct, NY County 1955].) For this *5 purpose, the racing association is required by statute to maintain a mutuel calculator and indicator approved by the Board, the so-called "totalisator” or "tote” system, which effects computations of pari-mutuel pools and sales of tickets, determines the odds payable to owners of winning tickets and displays all the necessary information to racetrack patrons. (See, Racing, Pari-Mutuel Wagering and Breeding Law § 226; Shapiro v Queens Jockey Club, 184 Misc 295, 298 [NY City Mun Ct, Queens County 1945]; Quarcini v Sabatino, 116 Misc 2d 240 [Batavia City Ct 1982].) NYRA allegedly employs a computer-operated tote system duly approved by the Board and the New York State Tax Commission.
The actual supervision of the conduct of the races conducted at NYRA racetracks is vested by statute in three Stewards. (Racing, Pari-Mutuel Wagering and Breeding Law § 212.) As approved in the statute, one of the Stewards is appointed by the Board, one by NYRA, and one by the Jockey Club, a private organization which registers the pedigrees of the thoroughbred horses (collectively the Stewards). The Stewards exercise such powers as are prescribed by the Racing Rules and Regulations. The Stewards are quasi-judicial officials who have ultimate jurisdiction and responsibility for making virtually all of the discretionary decisions that must be made during day-to-day racing operations. (See, Turcotte v Fell, 84 AD2d 535 [2d Dept 1981]; Shapiro v Queens County Jockey Club, supra.) NYRA’s franchise to conduct pari-mutuel wagering obligates it to conduct pari-mutuel betting in the manner and subject to the conditions prescribed by the Racing, PariMutuel Wagering and Breeding Law and Racing Rules, and its franchise is subject to revocation if it fails to do so. (Racing, Pari-Mutuel Wagering and Breeding Law §§208, 210; see, Salmore v Empire City Racing Assn., 123 NYS2d 688, 691-693 [Sup Ct, Kings County 1953], supra; see also, Carr v State of New York, 30 Misc 2d 983, 986 [Ct Cl 1961], affd 15 AD2d 709 [3d Dept 1962]; Aiello v Queens County Jockey Club, 208 Misc, at p 446.) The Racing Rules establish the procedure to be followed where, as here, the second race in the daily double has been declared a "no race”. (See, 9 NYCRR 4011.8, 4009.1.) As a bettor at Aqueduct, plaintiff is bound by the Racing, Pari-Mutuel Wagering and Breeding Law and Racing Rules, which are posted throughout the betting areas at the track. (See also, 9 NYCRR 4009.1.) As the court explained in Salmore v Empire City Racing Assn. (123 NYS2d, at p 692): "At the outset, plaintiff was at liberty to seek admission to the race *6 track or not as he pleased. If he was admitted, he was at liberty to view the horse races without necessarily betting on the horses. If he wished to place a bet, he was presumed to know that as every sport has its rules so equally every participant must abide by rules. If plaintiff did not like the rules, he was at liberty to refrain from betting. If notwithstanding his dislike of the rules, he placed a bet, then obviously the wagering was subject to all the then existing rules and regulations prescribed by the State Racing Commission.” (Accord, Shapiro v Queens County Jockey Club, 184 Misc, at p 299 ["The(se) rules and regulations (of the Board) control the manner of conducting races and the pari-mutuel system of wagering, which are binding upon the persons attending the horse races.”]) Plaintiff cannot be heard to complain that he was unaware of the rules under which he was playing.
The Racing Rules contain numerous provisions regarding pari-mutuel pools being canceled and the corpus of the pools refunded to the bettors. (See, e.g., 9 NYCRR 4009.20 [horse scratched], 4009.21 [failure of starting gate], 4011.8 [failure to select winning combination and cancellation of daily double], 4011.10 [horse scratched in daily double], 4011.15 [horse scratched and failure to select winning combination in quinella pool], 4011.22 [horse scratched and failure to select winning combination in trifecta pool], 4035.5 [Stewards may declare race void and order refunds], and 5210.2 [horse scratched, failure to select winning combination, and cancellation of race in double exacta].) The instant case is governed by section 4011.8 (b) which provides: "If no daily double ticket is sold combining the winners of the first and second races, or the second race is cancelled or declared 'no race, ’ the net pool shall be distributed to holders of tickets designating the winner of the first race, as in a win pool and the daily double shall terminate. ” (Emphasis supplied.)
The foregoing is precisely what occurred in the instant case. The Stewards here canceled betting on the second race in the late daily double. Consolation payoffs were made in accordance with the rule, and the late daily double was terminated. The Stewards are vested with broad authority under the Racing, Pari-Mutuel Wagering and Breeding Law and Racing Rules. (See generally, 9 NYCRR 4022.1 et seq.) For example:
"The stewards have power, as they think proper, to make and, if necessary, to vary all arrangements for the conduct of the meeting” (9 NYCRR 4022.8).
*7 "The stewards have supervision over all entries and declarations” (9 NYCRR 4022.10).
"The stewards have power to determine all questions arising in reference to racing at the meeting, subject to appeal to the commission” (9 NYCRR 4022.16).
"The stewards shall have the authority to declare a race void and to order all wagers thereon refunded if they shall determine that any occurrence before or during the running of such race calls for such action by them” (9 NYCRR 4035.5).
"If any case occurs which is not or which is alleged not to be provided for by this Article [i.e., the Racing Rules], it shall be determined by the stewards in such manner as they think just and conformable to the usages of the turf; and the stewards may impose such punishment and take such other action in the matter as they deem to be within the intent of this Article, including reference to the commission” (9 NYCRR 4022.21).
The Stewards’ decision to call off betting on the ninth race on May 6, 1986 due to the massive computer failure was well within their statutory authority. The courts of New York and elsewhere have long recognized the importance of maintaining the integrity and independence of the many judgment calls that must be made by racing officials. It has been held that Stewards, as quasi-judicial officials, cannot be held liable for the failure to exercise their discretion or for the consequences of the exercise of that discretion. (Turcotte v Fell, 84 AD2d 535 [2d Dept 1981], supra.) It has also been held that, since Stewards cannot be held liable for acts taken in the exercise of their quasi-judicial capacities, a racing association cannot be held liable for the acts taken by the steward it employs in the exercise of his quasi-judicial functions. (Turcotte v Fell, Sup Ct, Nassau County, Apr. 28, 1980, Pantano, J.) The fear of a lawsuit for damages by anyone disappointed by the Stewards’ decision, the vexation of extended litigation, and the incalculable liability which could be incurred solely as a result of a good-faith determination rendered pursuant to the broad discretion granted the Stewards by legislative mandate would necessarily have a drastic inhibiting effect on their exercise of their discretion and their professional judgment. Thus, in the leading case of Shapiro v Queens County Jockey Club (supra, pp 299-300), in which a disappointed bettor contested the Stewards’ call of a false start at a race at Aqueduct, the court set forth the standards by which racing officials’ decisions should be subject to review, if at all, by the courts:
*8 "Prompt and fair decisions by the stewards, judges and track officials, of innumerable questions, which arise from time to time, are of the utmost importance to preserve the integrity of horse racing.
"As in other professional competitive sports * * * it [is] of great practical importance to have * * * officials * * * who are experienced, mentally alert, fair and otherwise well qualified to make immediate decisions, and whose decisions must be final and binding. In more than one sense, such officials are truly judges of the facts, since they are closer to the actual situation and characters involved, at the time, and as and when, and under the circumstances in which the events occurred. Surely their immediate reactions and decisions of the questions which arose during the conduct of the sport should receive greater credence and consideration than possibly the remote, subsequent, matter-of-fact observation by a court in litigation subsequently instigated by a disgruntled loser of a wager * * *
"Where there is no charge of bad faith against the stewards, judges, referees or other officials of the sport, it cannot ordinarily be the duty of the court at some remote time to substitute its decision for that of those persons who are actually there at the time and who were specifically charged with the duty of determining the winners. I find nothing in the statutes to suggest that the Legislature intended to impose upon the courts any duty of decision in such matters.”
In Shapiro, as here, there was an equipment failure (to wit, a malfunctioning starting gate) and the Stewards were called upon to decide what to do. They ordered the race run again. The plaintiff’s horse finished first in the initial running of the race, but finished fifth in the rerun of the race ordered by the Stewards. The court dismissed the complaint, concluding: "When the officials declared a false start in the sixth race, the plaintiff was bound by said decision. There was only one official race. The defendant was justified in distributing the pari-mutuel pool based upon the official decision of the stewards at the track.” (184 Misc, at p 302.) (See also, Finlay v Eastern Racing Assn., 308 Mass 20, 30 NE2d 859 [1941] [court dismissed complaint of daily double ticketholders, where horse selected by plaintiffs as winner in one race was officially declared second by track officials but, after the defendant racing association had distributed the daily double pool, was declared first because original winner was disqualified].)
*9 A party appearing in opposition to a motion for summary judgment must lay bare his proof and present evidentiary facts sufficient to raise a genuine triable issue of fact. (Roche v Hearst Corp., 53 NY2d 767 [1981]; Fried v Bower & Gardner, 46 NY2d 765, 767 [1978]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1068 [Per Curiam 1979]; Platzman v American Totalisator Co., 45 NY2d 910, 912 [1978]; Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 290 [1973].) Mere conclusions, expressions of hope or unsubstantiated assertions are insufficient. (Supra.) An examination of the complaint herein as presently pleaded together with plaintiffs subsequent affidavits do not show the action of defendant by its Stewards to be capricious, arbitrary, discriminatory or unreasonable, nor do they show bad faith.
The pleaded facts relating to the system complained of do not on their face sustain the conclusion that the system is unreasonable. The court cannot interfere with the rule prescribed by defendants without showing that the rule is totally without reason. (Matter of Marburg v Cole, 286 NY 202, 212.) Courts will not invade the functions of public officials in matters of policy and discretion. The wisdom of the officials constituting the Racing Commission in the enactment of rules will not be disturbed in the absence of a plain showing of illegality, fraud, collusion, gross abuse of discretion, or a palpable abuse of authority amounting to illegality. To constitute an abuse of discretion, it must appear that it was exercised on grounds clearly untenable or to an extent clearly unreasonable. (Salmore v Empire City Racing Assn., supra.)
Therefore, the New York Racing Association, Inc.’s motion for summary judgment dismissing the complaint is granted; complaint dismissed.