**Albert WHITE, Plaintiff,**

v.

**TURFWAY PARK RACING ASSOCIATION, INC., Defendant.**

Civ. A. No. 88–73.

United States District Court, E.D. Kentucky, at Covington.

July 25, 1989.

Terrence L. Moore, Cincinnati, Ohio, for plaintiff.

Kurt A. Philipps, Jr., Deters, Benzinger & Lavelle, Covington, Ky., for defendant.

OPINION AND ORDER

BERTELSMAN, District Judge.

This is a diversity action in which the plaintiff alleges that the defendant, a race-track, committed fraud and negligence in violation of the Kentucky Rules of Racing. The matter is presently before the court on the defendant's motion for summary judgment, plaintiff's motion for class certification, and defendant's motion to reconsider the discovery order of February 8, 1989.

FACTS

On March 23, 1988, the plaintiff in this case, Albert White, and his partner, Leon Hughes, placed a $216.00 bet at Turfway Park. The form of the wager involved was known as a "Pick Six" bet. To win a "Pick Six," a bettor must pick winners in six

consecutive races, races three through eight, on an evening's race card. A bettor's picks are contained on a single parimutuel ticket that must be purchased prior to the start of race three, when the Pick Six begins. All Pick Six wagers are pooled for the night and each person who holds a winning ticket is entitled to a proportionate amount of the pool. If no one picks six winners in races three through eight, the pool carries over and is added to the Pick Six pool for the next evening's races.

On March 23, 1988, White and Hughes picked five of the six horses necessary to win the Pick Six that night. In race seven, the race at issue in this case, they picked the second-place finisher, horse number seven. Horse number five, "Matter of Time," won the seventh race. Consequently, White and Hughes did not collect any portion of the Pick Six pool. Fifty ticket holders held six winners on March 23, 1988, and they split the Pick Six pool, which totalled $1,474,060.00. Each winning ticket holder received $29,487.00.

Several days after the race, the plaintiff learned that the workout time for the winner of race seven on March 23, Matter of Time, had not been announced prior to the conclusion of the Pick Six wagering. Betting for the Pick Six ends at the start of the third race. The Kentucky Rules of Racing provide:

"(7) No horse which has not started in the past ninety (90) days shall be permitted to start unless it has at least one (1) published workout within twenty (20) days of entry at a distance satisfactory to the stewards of the meeting. In the event that a horse has done the requisite workout, but through no fault of the trainer, such workout does not appear in the past performances, the horse shall be permitted to start and the correct workout time announced."

Kentucky Rules of Racing, art. XIII, § 2(7), 810 KAR 1:013, § 2(7) (1987). The workout time is "announced" at Turfway by its posting on the video displays terminals located throughout the park.

"Matter of Time," the winner of the seventh race, was an Irish horse who had never run in the United States. All of the horse's prior starts had been in Ireland. Consequently, the horse did not have a start in the ninety days prior to the March 23 race.

Plaintiff alleges, and the court accepts as true, that a workout time on Matter of Time had been mailed to the state steward, Bernie Hettle, a week before the race by the horse's trainer. Turfway kept all workout times on a clip board in the racing stewards' office. The paddock judge, Gary Smith, was responsible for obtaining the workout times from the stewards' office and sending them to Galjour Electronics, the company which operated Turfway's video display system and displayed the workout times to the public. According to the plaintiff, the stewards had no knowledge of whether the workout times were actually communicated to the public because it was the responsibility of the paddock judge to ensure that the public received the information. Plaintiff also asserts that, on the morning of March 23, one of the stewards alerted Gary Smith that a workout time was needed for Matter of Time.

Smith attempted to page Matter of Time's trainer at 5:00 p.m. on the day of the race to obtain a workout time for the horse. The trainer did not arrive at the track until 6 p.m. that day, however. Before the start of the first race at 7:10 p.m., Smith took a list of workouts to the video room for display. According to the plaintiff, sometime between 7 and 7:30 p.m., Matter of Time's trainer went to the paddock area and gave Smith a workout card. Smith testified, however, that he discovered the card containing the workout time sometime between the second and third races. Smith stated that when he found the card, he immediately telephoned the workout time to the personnel in the video room for immediate dissemination over the television monitors.

The workers in the video room were employed not by Turfway but by Galjour Electronics, the company which operated Turfway's video display system on which workout times are displayed. These employees testified that they do not recall Smith tele-

phoning them with the workout time. They also stated that it was very busy that night and that it is common for Smith to telephone them with late workout times for immediate dissemination.

The workout time was not posted for Matter of Time that evening. Smith permitted the horse to go from the paddock area onto the track to race. The starter must also approve the entry of all horses in each race, but on the night of March 23, he did not give Matter of Time a starter's approval card. Matter of Time's trainer was not notified that the horse had neither a posted workout time nor a starter's approval card.

Matter of Time went off in the seventh race at 17 to 1 to win, and finished first. At the conclusion of the race, no objection or complaint regarding the running of the race or Matter of Time's eligibility to run the race was lodged with the stewards. Accordingly, the stewards declared the race results to be "official," and Turfway paid those bettors holding winning tickets in the race.

Plaintiff did not attend the race, but placed his bets through his partner, Leon Hughes, who did attend. Hughes and White assert that they would have bet on Matter of Time had a workout time for the horse been posted. Hughes left the track immediately after the seventh race. Neither Hughes nor White ever complained to the stewards or filed a complaint concerning the conduct of the stewards with the Kentucky Racing Commission.

Plaintiff filed this complaint on April 19, 1988, alleging that Turfway Park had negligently or fraudulently allowed Matter of Time to enter the seventh race on March 23, in violation of the Rules of Racing established by the Kentucky State Racing Commission. Federal jurisdiction is based on diversity of citizenship.

Plaintiff seeks to represent the class of bettors who participated in the Pick Six betting of March 23, 1988. On April 19, 1988, plaintiff moved to certify the class of plaintiffs. On May 23, 1988, defendant moved to dismiss. The court denied that motion on July 22, 1988.

On February 8, 1989, the court set a discovery deadline of April 1, 1989. Defendants have moved for the court to reconsider that deadline, and grant them an additional two and a half months to complete discovery. Defendants have also moved for summary judgment.

## ANALYSIS

■ Defendant argues that summary judgment should be granted because the plaintiff's claims are too speculative to permit recovery. It contends that it is mere conjecture that the secondplace finisher in the seventh race would have won had the winner been scratched and that it is also speculative to assume that plaintiff and his partner would have bet on the winner of that race had its workout time been posted. Defendant also asserts that the plaintiff and all other bettors are bound by the Rules of Racing, which provide that the stewards' determination of the order of finish in a race is final. It argues that there is a strong public policy against adjudicating a sporting event rules violation in federal court, and consequently, the court should grant its motion for summary judgment.

Plaintiff asserts that the Kentucky Rules of Racing impose a duty upon the defendant in favor of the plaintiff to conduct its race "on the highest possible plane." He argues that Turfway negligently breached that duty when it violated the Rules of Racing by allowing Matter of Time to run without first publishing a workout time. He contends that Turfway, as a third party to the race, interfered with the economic advantage of the plaintiff by negligently or intentionally failing to post the workout time. Plaintiff emphasized at the hearing on this matter that he was not attempting to have the parimutuel payoff redistributed, but that he was using the payoff of March 23 merely as a measure of his damages for the deprivation of his economic advantage.

The court concludes that it must grant the defendant's motion for summary judgment. The Rules of Racing do not entitle

defendant to the relief which he seeks. The plaintiff is essentially asking the court to determine that the winner of the seventh race at Turfway Park on March 23, 1988 was ineligible, and that the second place horse should have been declared the official winner of that race. Such a determination is one that is inappropriate for a federal court to make.

KRS 230.260(3) establishes the authority of the Kentucky State Racing Commission to promulgate administrative regulations and conditions "under which thoroughbred horse racing ... shall be conducted in this state." KRS 230.260(1) states: "The commission is vested with jurisdiction and supervision over all thoroughbred race meetings in this Commonwealth and over all associations and all persons on association grounds...." The purpose of the thoroughbred racing law is stated in KRS 230.-215(1):

"It is the policy of the commonwealth of Kentucky, in furtherance of its responsibility to foster and to encourage legitimate occupations and industries in the commonwealth and to promote and to conserve the public health, safety, and welfare, and it is hereby declared the intent of the commonwealth to foster and to encourage the thoroughbred horse breeding industry within the commonwealth and to encourage the improvement of the breed of thoroughbred horses. Further, it is the policy and intent of the commonwealth to foster and to encourage the business of legitimate thoroughbred racing with parimutuel wagering thereon in the commonwealth on the highest possible plane."

The Kentucky State Racing Commission is an independent agency of state government and is "vested with all powers necessary and proper to carry out fully and effectively those duties imposed upon it by the statutes." *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298 (Ky.App.1972); KRS 230.260. In *State Racing Commission v. Latonia Agricultural Ass'n,* 136 Ky. 173, 123 S.W. 681 (1909), the Kentucky Supreme Court upheld the constitutionality of the State Racing Act. *See also Bobinchuck v. Levitch,* 380 S.W.2d 233, 246 (Ky.App.1964); *Douglas Park Jockey Club v. Talbott,* 173 Ky. 685, 191 S.W. 474 (1917).

The Kentucky Racing Commission promulgated the Rules of Racing. These rules are applicable to all tracks licensed to conduct thoroughbred racing in Kentucky, including Turfway. The Rules expressly provide that the stewards' ruling as to the order of finish is final:

"After the stewards have caused the 'official' sign to be flashed on the infield result board, the order of finish so declared official shall be final, and no right of appeal thereof shall exist, insofar as the pari-mutuel payoff is concerned. Any subsequent change in the order of finish or award of purse money after the result of a race has been so declared official by the stewards shall in no way affect the pari-mutuel payoff."

Kentucky Rules of Racing, art. XVI § 16, 810 KAR 1:016 § 16. The stewards are not employees of the racetracks, but are responsible only to the Racing Commission: "Stewards shall be responsible only to the commission and may be replaced by the commission at any time for failure to perform their duties to the satisfaction of the commission." 810 KAR 1:004 § 2(3).

The courts have generally held that bettors consent to be bound by the Rules of Racing and by the rulings of the stewards as to the order of finish when they place bets. *Finlay v. Eastern Racing Ass'n,* 308 Mass. 20, 30 N.E.2d 859 (1941); *Salmore v. Empire City Racing Ass'n,* 123 N.Y.S.2d 688 (1953); *Shapiro v. Queens County Jockey Club,* 184 Misc. 295, 53 N.Y.S.2d 135, 137 (N.Y.Mun.Ct.1945). For example, in *Finlay,* the court upheld the official decision of the stewards to declare certain horses the winners in daily double races. The court stated:

"It may be well to preface our discussion with a few words as to what we conceive the function of the court to be in a case of this kind. It is common knowledge that at formal horse races there are persons in attendance who are charged with the duty of determining which horses are the winners under the terms and condi-

tions under which a race is being conducted.... Purchasers of race tickets must be held to know this and to consent to be bound by the judgment of those regularly charged with the duty of decision. At least in cases where as here there is no charge of bad faith, it cannot ordinarily be the duty of a court either to determine the eligibility of entries or to decide which horse won a race."

30 N.E.2d at 861.

Similarly, in *Salmore,* the court held that a complaint seeking an injunction against a racetrack, restraining it from distributing a parimutuel pool when two horses finished in a dead heat, failed to state a cause of action. The court concluded:

"At the outset, plaintiff was at liberty to seek admission to the racetrack or not as he pleased. If he was admitted, he was at liberty to view the horse races without necessarily betting on the horses. If he wished to place a bet, he was presumed to know that as every sport has its rules so equally every participant must abide by rules. If plaintiff did not like the rules, he was at liberty to refrain from betting. If notwithstanding his dislike of the rules, he placed a bet, then obviously the wagering was subject to all the then existing rules and regulations prescribed by the State Racing Commission."

123 N.Y.S.2d at 692.

In this case, the decision of the stewards in the seventh race that Matter of Time was eligible to run and was the winner of the race must be given a presumption of correctness. "Surely [the stewards'] immediate reactions and decisions of the questions which arose during the conduct of the sport should receive greater credence and consideration than possibly the remote, subsequent, matter-of-fact observation by a court in litigation subsequently instigated by a disgruntled loser of a wager." *Shapiro v. Queens County Jockey Club,* 184 Misc. 295, 53 N.Y.S.2d 135, 138 (N.Y.Mun. Ct.1945). The reasoning behind such a presumption of correctness was explained by a New York state court:

"The fear of a lawsuit for damages by anyone disappointed by the Stewards' decision, the vexation of extended litigation, and the incalculable liability which could be incurred solely as a result of a good faith determination rendered pursuant to the broad discretion granted the stewards by legislative mandate would necessarily have a drastic inhibiting effect on their exercise of their discretion and their professional judgment."

*Discenza v. New York Racing Association, Inc.,* 134 Misc.2d 3, 509 N.Y.S.2d 454, 457 (N.Y.Civil Ct.1986). In *Discenza,* the court granted the racetrack's motion for summary judgment in a suit filed by a losing bettor. *Id.*

In this case, the paddock judge, starter, and the stewards all found that Matter of Time was eligible to run in the seventh race. Even accepting as true the plaintiff's contention that a workout time was not posted for the horse prior to the conclusion of Pick Six betting, the decision of the stewards that Matter of Time could run was final under the Rules of Racing. Furthermore, it was not the duty of Turfway, the defendant in this case, to determine the eligibility of horses entering the races. That decision is left to the stewards, agents of the Kentucky Racing Commission, not to the defendant. The Rules of Racing, by which plaintiff agreed to be bound when he entered Turfway and placed a bet there, provide that the determination of the stewards as to the official order of finish is final.

■ In addition, even if the court were to decide that the Rules of Racing were violated and that the second place horse should have been declared the official winner, plaintiff would not be entitled to relief. The Rules of Racing expressly provide that the racetrack is obligated to pay those holding winning tickets their bets after the stewards have caused the "official" sign to be posted. Kentucky Rules of Racing, art. XVI § 16, 810 KAR 1:016 § 16. The Rules state: "Any subsequent change in the order of finish or award of purse money after the result of a race has been so declared official by the stewards shall in no way affect the pari-mutuel payoff," *id.* and "[i]n the event a horse is disqualified after a

race has been declared official for pari-mutuel payoff and thereby causes revision of the order of finish in such race: (1) The pari-mutuel payoff shall in no way be affected." *Id.*, art. XVII § 7, 810 KAR 1:017 § 7. Thus, even if the official winner of the seventh race were changed by the stewards, the racing commission or this court, the pari-mutuel payoff would not be altered. Under the Rules of Racing, the plaintiff would not be entitled to collect on his winning ticket.

In *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298 (Ky.App.1972), the Kentucky Supreme Court upheld the redistribution of the purse at the 1968 Kentucky Derby because after testing the winning horse, Dancer's Image, it discovered the presence of illegal drugs in the horse's bloodstream. The Kentucky Racing Commission had ordered the redistribution of the purse, but the trial court had reversed the finding. *Id.* at 299. The Supreme Court reinstated the commission's finding, concluding that the commission had substantial evidence to conclude that the winning horse should be disqualified, even after the stewards had declared it the "official" winner. *Id.* at 309. The court noted, however, that the change of the official winner did not affect "the betting on the race and the payment of parimutuel tickets." *Id.* at 300.

Clearly, in this case, even a change in the "official" winner of the seventh race of March 23, 1988 would not affect the payout of the parimutuel bets, and would not, therefore, entitle the plaintiff to the payoff of his Pick Six ticket. Under the Rules of Racing and the Kentucky Supreme Court's decision in *Fuller*, a change in the official finish of the race does not affect the parimutuel betting. Plaintiff does not allege that the Rules of Racing are illegal or unconstitutional, and concedes that he is bound by them. In fact, he seeks to invoke one of those rules as the basis for relief. He cannot, however, under those same rules, receive the relief requested.

Plaintiff also argues that he is not seeking to redistribute the parimutuel payoff, but to use that payoff solely as a measure of damages for his economic loss caused by defendant's negligence or fraud in failing to post the workout time. This argument is, however, unconvincing. Even if the court were to find that the defendant committed a tort in failing to post the workout time, in order for plaintiff to recover, the court would still be required to determine that the horse which the plaintiff bet on in the seventh race was the winner of that race. Thus, the court would be deciding the eligibility of the horses entered in the seventh race and the final order of finish of that race. Such a determination is clearly one which the stewards should make, not a federal district court.

In addition, the Kentucky Rules of Racing specifically deny to bettors the standing to challenge the order of finish of a race. Article XVII states:

"Objections or complaints against a horse or jockey entered in a race shall be received only when duly lodged by the owner or authorized agent of the owner, or the trainer, or the jockey, of another horse engaged in the same race and whose horse suffered or could suffer by the alleged rule violation. An inquiry also can be made by a racing official."

Kentucky Rules of Racing, art. XVII, § 1, 810 KAR 1:017, § 1. The Rules of Racing do not allow individual bettors such as the plaintiff to claim damages for a violation of Article XIII, which addresses the procedures necessary to enter a horse in a race. The reason for such rules is clear: if every losing bettor could challenge the eligibility of winning horses, the racetracks, owners, stewards, racing officials and Racing Commission would be subject to endless disputes and litigation. Additionally, parimutuel wagering, particularly parimutuel payoffs, would be impossible to administer.

Plaintiff has not cited a single case which allows a bettor to state a cause of action for interference with prospective economic advantage for a technical rule violation. He argues that *State Farm Mutual Automobile Insurance Co. v. Reeder*, 763 S.W.2d 116 (Ky.1988) provides a private cause of action for persons injured by violations of state statutes. In *Reeder*, the

Kentucky Supreme Court recognized a private cause of action by an individual against an insurance company for violation of the Unfair Claims Settlement Practices Act. *Id.* Relying on KRS 446.070,[1] the court held that the plaintiff was among the class intended to be protected by the Insurance Code, and, as such, had a private right of action for violation of the statute. *Id.* at 117.

■ In this case, however, plaintiff, as a bettor, is not among the class of persons intended to be protected by the Kentucky Rules of Racing. The Rules of Racing specifically outline those persons intended to be protected by the rules for eligibility of horses. These include owners, trainers and jockeys, but do not include bettors. Kentucky Rules of Racing, art. XVII § 1, 810 KAR 1:017 § 1. The Rules also specifically provide that bettors are not protected by those same rules:

> "After the stewards have caused the 'official' sign to be flashed on the infield result board, the order of finish so declared official shall be final, and no right of appeal thereof shall exist, insofar as the pari-mutuel payoff is concerned. Any subsequent change in the order of finish or award of purse money after the result of a race has been so declared official by the stewards shall in no way affect the pari-mutuel payoff."

Kentucky Rules of Racing, art. XVI § 16, 810 KAR 1:016 § 16. This section makes clear that bettors are not intended to be protected by the rules for the eligibility of horses. Thus, plaintiff's reliance on *Reeder* and KRS 446.070 is misplaced.

In *Youst v. Longo*, 43 Cal.3d 64, 233 Cal.Rptr. 294, 304, 729 P.2d 728, 738 (1987), the California Supreme Court recognized that:

> "The courts are not appropriate forums for adjudicating claimed sporting event violations which allegedly resulted in prospective economic loss.... The regulation of sports conduct heretofore has

been delegated to supervisory regulatory agencies for each particular sport. Specific rules and regulations exist to provide for penalties for violations; remedies are seldom economic but usually involve sanctioning, within the context of the competition, the violating competitors. Our crowded courts are ill-equipped to decide such specialized matters."

Similarly, in this case, this court is not the appropriate forum for adjudicating alleged violations of the Kentucky Rules of Racing.

Plaintiff in his complaint is in essence asking this court to determine the outcome of a horse race, in spite of the presence of racing officials at that race. His demand is the equivalent of asking the court to overrule the decision of an umpire in a baseball game or a referee in a football game. Clearly, this court is not the arbiter of such matters, which are more appropriately left to the agency which the Commonwealth has designated as the decisionmaker in such matters.

Plaintiff concedes, and case law indicates, that he is bound by the Rules of Racing. In fact, plaintiff seeks damages for a violation of those rules. It is apparent, however, that the Rules do not provide plaintiff with the remedy he demands. While plaintiff may have been injured by defendant's failure to post the workout time of Matter of Time, not every injured party has the right to recover damages for harm which has occurred. *See Harris Corp., Data Communications v. Comair, Inc.*, 510 F.Supp. 1168, 1172 (E.D.Ky.1981), *aff'd*, 712 F.2d 1069 (6th Cir.1983). The law must provide a remedy for the injury. In this case, the law, and the Rules of Racing, provide no such relief. Because the Rules of Racing clearly do not permit the relief that he seeks, plaintiff's claim must be dismissed.

Summary judgment should be granted when "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325,

---

1. KRS 446.070 provides:
   "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation although a penalty or forfeiture is imposed for such a violation."

622

106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In this case, there are no genuine issues of material fact, and, even viewing the facts in the light most favorable to the plaintiff, he is not entitled to relief. Accordingly, defendant's motion for summary judgment must be granted. The motion to certify a class of plaintiffs and the motion for reconsideration of the discovery deadline are denied as moot.

Therefore, for the above reasons,

IT IS ORDERED as follows:

1. That defendant's motion for summary judgment be, and it is, hereby GRANTED;

2. That plaintiff's motion for class certification be, and it is, hereby DENIED;

3. That defendant's motion for reconsideration of the discovery deadline be, and it is, hereby DENIED.