■ WILLIAM A. CRAFT, Appellant, v CAPITAL DISTRICT REGIONAL OFF TRACK BETTING CORPORATION, Respondent. — Appeal from an order of the Supreme Court at Special Term (Cerrito, J.), entered October 31, 1983 in Albany County, which granted defendant's motion for summary judgment dismissing the complaint.

Not every purchaser of a winning Lotto ticket becomes an instant millionaire. In fact, effective March 26, 1981, the relevant official rules and regulations were amended to provide that when no winning ticket has been purchased in a given week, an alternate first prize would be awarded (former 21 NYCRR 2817.6 [c] [1] [repealed Jan. 7, 1983]). Such alternate first prize would consist of 20% of the first prize moneys derived from that week's winning pool and be payable to the purchaser(s) of a valid ticket(s) containing any five of the six winning numbers plus the supplementary number. If more than one such ticket was presented, the alternate first prize would be divided equally between the holders of such tickets.

On January 23, 1982, about 10 months after the effective date of the amended regulation, there was no first prize winner, but instead, 10 tickets qualified as winners of the alternate first prize. Plaintiff had purchased 2 of the 10 tickets and claimed that he was entitled to two tenths of 50% of the first prize moneys for that week ($1,216,141), or $121,614. His claim was based upon the fact that the "bet slips" (forms for selection of numbers desired which were furnished by defendant, an authorized Lotto sales agent, and used by plaintiff) had printed on the reverse side the words "ALTERNATE FIRST PRIZE — if no regular first prize is awarded in a given week *one-half* of the regular first prize money for that week will be divided equally among tickets matching 5 winning numbers plus the supplementary number" (emphasis added). In addition, plaintiff contends that a poster called "Lotto News", prominently exhibited at defendant's business, stated that the first prize for the January 23, 1982 drawing would be $1,216,141, one half of which was $608,070 and that he was entitled to two tenths thereof. The State Division of the Lottery tendered only the amount provided by the regulation, i.e., two tenths of 20% of the first prize moneys derived from that week's winning pool. Plaintiff accepted and negotiated checks totaling $27,852 and, after filing a notice of claim, commenced this action to recover compensatory and punitive damages alleging fraud, deceit, misrepresentation, breach of contract, moral culpability and gross negligence. Special Term granted defendant's motion for summary judgment dismissing the complaint, giving rise to this appeal by plaintiff.

The gravamen of this case is whether the regulations establishing the amount of the prize awarded were binding on plaintiff, or whether, as plaintiff urges, common-law principles of tortious conduct allow recovery premised on defendant's misrepresentations. In essence, plaintiff contends that he was unaware of the regulations and could rely upon defendant's representations set forth on the bet slip and the "Lotto News" that one half of the first prize moneys would constitute the alternate first prize. This contention necessitates a myopic reading of the very documents upon which plaintiff relies. Both the on-line ticket (receipt) and the bet slip indicate that players are bound by the rules and regulations of the State Lottery (see *Zapata v Quinn,* 564 F Supp 23, affd 707 F2d 691). The "Lotto News" poster indicated that multiple winners must share $696,302, or the first prize moneys derived from that week's winning pool, and not the actual first prize jackpot, as established by the lottery rules. Clearly then, plaintiff was on notice that the pertinent lottery rules and regulations were determinative of the prize awarded.

As indicated above, the rules and regulations relative to alternate first prize awards were changed in advance of this particular drawing (former 21 NYCRR 2817.6 [a] [2], [c] [1] [repealed Jan. 7, 1983]), and authorized an award of only 20% of the first prize moneys derived from that week's winning pool, i.e., 20% of $696,302 or $139,260.40. Since plaintiff held two of the 10 qualifying tickets, he was entitled to and received $27,852 (less certain tax deductions). There is no dispute that these regulations were properly promulgated and thus entitled to the full force and effect of the law (*Molina v Games Mgt. Servs.*, 58 NY2d 523, 529). Since the regulations pertain to gambling, they are to be strictly construed (*id.*, at p 529) and knowledge of their restrictions is presumed (see, e.g., *Ronca v New York State Racing & Wagering Bd.*, 90 Misc 2d 324). The rules are binding upon the agency and any person affected (*Matter of Frick v Bahou*, 56 NY2d 777) notwithstanding reliance upon erroneous information provided by a government instrumentality, i.e., defendant (see 21 NY Jur, Evidence, § 121 [1984 supp], p 33). We also note that by accepting the award, plaintiff lost his capacity to sue and discharged defendant of liability (21 NYCRR 2803.6; see *Molina v Games Mgt. Servs., supra,* p 529). In sum, since plaintiff was on notice that the alternate first prize had been changed and received the award due, Special Term properly granted defendant's motion for summary judgment.

Order affirmed, without costs. Kane, J. P., Main, Casey and Weiss, JJ., concur.