OPINION OF THE COURT
George E. Wade, Jr., J.
Upon the foregoing papers, this court will proceed to consider the defendant’s motion to dismiss this small claim action wherein the claimant brings suit against the defendant for "money due on undelivered winning ticket” in the amount of $181.50.
The facts are not really in dispute, however, the court must *1039 assume the truth of claimant’s version of the facts (Sanders v Winship, 57 NY2d 391, 394).
Claimant placed a number of pari-mutuel bets at a betting window at defendant’s facility located at the Aqueduct Race Track. Before leaving the betting window, claimant complained to the clerk that he did not receive all the tickets that he had paid for, whereupon the clerk directed him to make out a formal complaint downstairs. A complaint was made, as it appears from the report of E. J. Coyne, defendant’s parimutuel supervisor, and upon investigation, claimant claims that there was a winning ticket and that Mr. Coyne recommended that he should be paid $181.50. This recommendation was subsequently overruled by Mr. Coyne’s supervisor. Claimant thereafter contacted the New York State Racing and Wagering Board (the Board) and their letter of December 19, 1985, advised defendant: "Based on an investigation from this office, the Board is advising you to pay Mr. Seltzer”.
Defendant refused to pay the claim resulting in this small claim action.
Defendant in its motion to dismiss alleges generally that, because claimant cannot produce a winning ticket, the relevant law and various cited court decisions forbid payment of the claim; that the directive of the Board, dated December 19, 1985, to pay the claim, was not valid as the Board had no right to interpret the Racing, Pari-Mutuel Wagering and Breeding Law and that said right belonged to the New York State Tax Commission and that said Commission had directed defendant to refuse to pay this claim.
Whereupon claimant brought the small claim action to recover $181.50.
THE LAW
In a small claim action, while the rules of evidence and the procedure are greatly relaxed to achieve "substantial justice”, the ultimate result must conform to rules of substantive law (CCA 1804; Woodson v Frankart Kings Inc., 98 Misc 2d 1101). Overwhelmingly, small claim litigants appear pro se and usually do not present any supportive legal theory for their claims, nor are they required to do so under the simplified procedure permitted, but in essence they rely upon the court for "substantial justice”. Thus, this court would agree with the reasoning of Judge Friedmann in Faby v Air France (113 Misc 2d 840, 841) that the court "has an obligation to determine *1040 the appropriate theory of substantive law to support the small claim”, if possible, especially when a motion to dismiss the claim is presented by a defendant represented by counsel who cites what appears to be cogent legal reasons why the claim should be dismissed. For the most part, small claim claimants do not have the wherewithal to research legal theories on cases to rebut a motion to dismiss submitted by counsel. The court, on the other hand, charged with the responsibility to administer "substantial justice” in the small claim action, must do whatever is necessary to aid the claimant to resist the motion to dismiss.
Before proceeding to the consideration of whether there is a basis in substantive law to achieve "substantial justice” in this matter, the court feels constrained to dispose of certain misconceptions of law advanced by counsel for defendant in this motion to dismiss. Firstly, defendant’s blatant assertion that the "Board’s attempts to interpret the Racing Law are without statutory and common law basis” is absurd.
The New York State Racing, Pari-Mutuel Wagering and Breeding Law became effective in this State on April 1, 1983. There was created in that law the New York State Racing and Wagering Board with general jurisdiction over all horse racing activities and all pari-mutuel activities, both on or offtrack and over all corporations, associations and persons engaged in those activities (Racing, Pari-Mutuel Wagering and Breeding Law art I; Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 54 NY2d 154). Thus, it is, and this court so finds, that the Board is charged with the responsibility to administer the Racing, Pari-Mutuel Wagering and Breeding Law and has jurisdiction over all activities that flow therefrom and over all entities that operate under the law including the defendant herein.
There can be no cavil that an agency, created by the Legislature, can interpret the statute that it is charged with the responsibility to administer. Such interpretations by said administrative agency must be upheld if not irrational or unreasonable (Matter of Howard v Wyman, 28 NY2d 434, 438; Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 471; Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444, 448). Western Regional Off-Track Betting Corp. v Finger Lakes Racing Assn. (129 Misc 2d 693 [Sup Ct, Genesee County 1985]), cited by defendant, is not inapposite to this rule, but it appears that defendant’s reliance thereon in as far as this case is con *1041 cerned, is misplaced. The court, in Western, recognized that the Board had been granted ultimate supervisory and regulatory powers and broad discretion over horse racing activities and pari-mutuel betting, held, nevertheless, that the issue before it involved a pure question of law and not an interpretation of facts and law (see, Matter of Van Teslaar [Levine], 35 NY2d 311, 317).
Within the circumstances of this case, the Board has a right to interpret the Racing, Pari-Mutuel Wagering and Breeding Law and the regulations (Racing, Pari-Mutuel Wagering and Breeding Law § 101) subject to scrutiny by the Supreme Court under CPLR article 78.
Defendant’s second misconception, that only the New York State Tax Commission has the authority to interpret the Racing, Pari-Mutuel Wagering and Breeding Law, has no basis in law or fact. Section 171 of the Tax Law succinctly sets forth the powers and duties of the Tax Commission, none of which set forth any powers or duty with respect to the Racing, PariMutuel Wagering and Breeding Law, notwithstanding sections 229 and 232 of the Racing, Pari-Mutuel Wagering and Breeding Law. Those latter sections, while providing for payment on presentation of winning tickets, mainly provide for the percentage of moneys collected as a result of pari-mutuel betting to be paid to the State Tax Commission as a "reasonable tax * * * for the privilege of conducting pari-mutuel betting” and for the disposition of money accumulated as a result of unpaid pari-mutuel tickets not presented for payment and the percentage to be paid to the Tax Commission as tax.
The court has considered the many cases cited by the defendant, all of which hold that the failure to present a winning ticket is fatal to a plaintiff’s claim for payment. However, this court finds that this case is analogous to Mills v Roosevelt Raceway (59 Misc 2d 938, revd 66 Misc 2d 251, affd 37 AD2d 1048).
In Mills (supra), plaintiff presented a winning ticket to an identification clerk, employed by defendant to obtain information for IRS purposes. When plaintiff presented the ticket to the cashier for payment, he was told that he did not have a winning ticket. Plaintiff testified on the trial. Plaintiff testified that the clerk had switched the winning ticket. The jury returned a verdict for plaintiff of $4,128, however, the trial court granted defendant’s motion to set aside the verdict on the ground that plaintiff had the responsibility to see that the *1042 clerk returned the proper ticket to him and that because he did not present a winning ticket to the cashier for payment he failed to make out a prima facie case.
The Appellate Term, Second Department (66 Misc 2d 251, supra), reversed and reinstated the verdict holding that: "The essence of plaintiffs charge is that there was a tortious interference with [plaintiffs right of] contract which excused his full performance and for which defendant is responsible.” (Affd without opn 37 AD2d 1048, supra.)
In this case claimant does not alleged that he lost his winning ticket or that it was misplaced, but that the failure to deliver to him, certain tickets that happen to be winners, that were paid for, was a "tortious interference” with his rights. Thus, this court would hold that plaintiff has a cause of action (Mills v Roosevelt Raceway, supra) and the motion denied.
In Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd. (supra), the court held that the Board could intervene in a betting controversy and it has done so in this case by directing that the defendant pay claimant’s claim. Not having sought an article 78 review of the Board’s determination, defendant is, therefore, barred by the doctrine of res judicata or collateral estoppel which applies to an issue decided in a prior judicial or administrative proceeding between parties (Matter of Newsday, Inc. v Ross, 80 AD2d 1). Accordingly, this court, in the interest of "substantial justice”, denies the motion to dismiss and directs that judgment be entered against the defendant in the amount of claimant’s claim plus costs and disbursements and the costs of this motion.