OPINION OF THE COURT
Per Curiam.
Order entered February 2, 1987 affirmed, with $10 costs.
"Everybody’s got a horse story out there, but the only one worth listening to is the one in which you’ve cashed a ticket” (Murray, The Hard Knocker’s Luck, at 263).
The "horse story” underlying this lawsuit is summarized as follows. Plaintiff purchased several combinations of pari-mutuel tickets on the "daily double” at Saratoga Racetrack on August 2, 1986, including a $300 wager coupling Passing Thunder in the first race with Allumeuse, a filly entered in the second race. In fact Passing Thunder did win the first race, and no issue is raised concerning that event. In the second race Allumeuse crossed the finish line first, but was not "officially” declared the winner. Because two horses had fallen and unseated their jockeys during the running of the second race, the three presiding stewards — the individual defendants herein — made an objection immediately following the completion of the race and initiated an inquiry to determine the cause of the mishap. After reviewing a videotape of the race, the stewards disqualified Allumeuse from first place and placed her last for a foul which, defendants apparently now concede, was committed not by Allumeuse, but by a horse named Syntonic. In light of the stewards’ determination, no payoff was made to those persons, plaintiff included, who held wagers on Allumeuse. The defendant New York Racing Association (NYRA) instead distributed the "daily double” and other relevant pools among bettors presenting pari-mutuel tickets on Festivity, the horse (erroneously) declared the "official” winner of the second race. Cold comfort was provided plaintiff later that day when the stewards, having recognized and publicly acknowledged their mistake, awarded the winner’s share of the second race purse money to the owner of Allumeuse.
Plaintiff thereafter commenced this action in Civil Court against the NYRA and the stewards presiding over the disputed race. The complaint sets out two causes of action, the first sounding in negligence, and the second founded upon *647 claims of fraud and deceit. Each cause seeks $14,550 in compensatory damages, representing the projected winnings on plaintiffs dishonored pari-mutuel tickets, and punitive damages of $10,000. After joinder of issue, defendants moved to dismiss the complaint for failure to state a cause of action. The court below granted defendants’ motion, and we affirm.
Under the Rules and Regulations of the New York State Racing and Wagering Board, the stewards appointed to supervise a Thoroughbred race meeting are accorded broad and varied powers to enforce the "Rules of the Race” (9 NYCRR part 4035). Among these powers is the authority "to determine the extent of disqualification in case of fouls”, and where a foul has occurred to "place the offending horse behind such horses as, in their judgment, it interfered with, or they may place it last” (9 NYCRR 4039.20; emphasis added; see, 9 NYCRR 4035.2 [f]). As the regulation makes plain, the stewards’ decision to disqualify Allumeuse, albeit mistaken, necessarily involved the exercise of discretion. Such a quasi-judicial determination cannot form the predicate for a civil suit, "however erroneous or wrong it may be, or however malicious even the motive which produced it” (Rottkamp v Young, 21 AD2d 373, 375, quoting from East Riv. Gas-Light Co. v Donnelly, 93 NY 557, 559; accord, Tango v Tulevech, 61 NY2d 34; see, Turcotte v Fell, 84 AD2d 535).
Nor may common-law liability properly be fastened upon the defendant NYRA. The Racing Association is in the nature of a stakeholder responsible for the collection and distribution of the pool and, unlike a bookmaker, does not make or accept a wager or act on personal responsibility (Aliano v Westchester Racing Assn., 265 App Div 225; Holberg v Westchester Racing Assn., 184 Misc 581 [App Term, 1st Dept]). In any event, defendant NYRA was justified in distributing the "daily double” pool in accordance with the "official” announcement of the winners; indeed, it was obligated to do so. The controlling regulation is found at 9 NYCRR 4008.1, and provides: "When a result is official, that word shall be flashed on the result board and shall signify that the placing of the horse is final insofar as the payoff is concerned. If any change be made in the order of finish of a race after the result is so declared official, it shall not affect the payoff” (see, 9 NYCRR 4008.4).
Although we can readily sympathize with the plaintiffs situation, we do not think it unreasonable to require plaintiff to abide by the decision of the stewards. As the Supreme Judicial Court of Massachusetts stated in a similar context *648 more than 40 years ago: "It is common knowledge that at formal horse races there are persons in attendance who are charged with the duty of determining which horses are the winners under the terms and conditions under which a race is being conducted, much as at football or baseball games or other public contests persons are provided to act as referees or umpires. Purchasers of race tickets must be held to know this and to consent to be bound by the judgment of those regularly charged with the duty of decision” (Finlay v Eastern Racing Assn., 308 Mass 20, 23, 30 NE2d 859, 861).
Parnés, J. P., Sandifer and Ostrau, JJ., concur.