In the Matter of MORRIS CRAMER et al., Respondents, v NEW YORK STATE RACING ASSOCIATION et al., Appellants.

Third Department, March 17, 1988

**APPEARANCES OF COUNSEL**

*Cahill Gordon & Reindel (H. Richard Schumacher* and

*Loretta E. Lynch* of counsel), and *Rice & Justice (Robert Hardwick Bixby* of counsel), for New York State Racing Association, appellant.

*Kouray & Kouray (Christian X. Kouray* of counsel), for Capital District Offtrack Betting Corporation, appellant.

*Robert Abrams, Attorney-General (Daniel Smirlock* and *William J. Kogan* of counsel), for New York State Racing and Wagering Board, appellant.

*Eugene R. Spada* for respondents.

## OPINION OF THE COURT

WEISS, J.

This proceeding has its genesis in the now infamous second race conducted at the Saratoga Thoroughbred Race Track in Saratoga County on August 2, 1986. "Allumeuse", the perceived winner of the race, was disqualified for a foul and placed last in the official order of finish, following a Stewards[1] "inquiry" that was precipitated by a collision during the stretch run *(see,* 9 NYCRR 4039.20). In its stead, a horse called "Festivity" was declared the "official" winner on the result board and over the track's public address system *(see,* 9 NYCRR 4008.1). The net proceeds of the pari-mutuel[2] pools were then distributed by respondents New York State Racing Association (hereinafter NYRA) and Capital District Off Track Betting Corporation (hereinafter Capital OTB) to the winning ticket holders as defined by the official order of finish. Later that afternoon, the State Steward issued a written statement acknowledging that the disqualification of Allumeuse was in error. The statement directed NYRA to pay the purse money to Allumeuse's owner *(see,* 9 NYCRR 4039.21), but explained

---

1. The Stewards are a panel of three officials charged with the supervision of the race *(see,* Racing, Pari-Mutuel Wagering and Breeding Law § 212; 9 NYCRR part 4022). One member, referred to as the "State Steward", is a State employee appointed by respondent New York Racing and Wagering Board; the other two are named, with Board concurrence, by respondent New York State Racing Association and the Jockey Club, respectively.

2. Pari-mutuel wagering in New York involves the pooling of many separate bets made both on and off track throughout the State. A given track and an off-track betting operation act as stakeholders—collecting the bets, deducting from them an amount fixed by statute and redistributing the remainder of each pool to the holders of winning tickets for that particular pool *(see,* Racing, Pari-Mutuel Wagering and Breeding Law §§ 229, 527; *see also, Aliano v Westchester Racing Assn.,* 265 App Div 225, 228-229). Here, the total "handle" (amount bet) exceeded $1,676,000.

that the pari-mutuel payoff would not be changed due to the regulations of respondent New York Racing and Wagering Board (hereinafter the Board) *(see,* 9 NYCRR 4008.4).

Petitioners, who allegedly hold pari-mutuel tickets on Allumeuse, commenced the instant CPLR article 78 proceeding against NYRA, Capital OTB and the Board, claiming that the official race result as declared by the Stewards was arbitrary and capricious, and unsupported by substantial evidence. Petitioners seek a nullification of the Stewards' official decision, a declaration of Allumeuse as the official winner, and an appropriate redemption of their pari-mutuel tickets as "incidental damages" pursuant to CPLR 7806. Supreme Court denied respondents' motions to dismiss the petition and, by leave of this court, the instant appeal ensued.

To place this controversy in proper perspective, a brief identification of the respondents is in order. The Board is part of the State Executive Department and exercises "general jurisdiction over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the state and over the corporations, associations, and persons engaged therein" (Racing, Pari-Mutuel Wagering and Breeding Law § 101 [1]). NYRA is a private nonprofit racing association which offers horse racing and pari-mutuel wagering at three thoroughbred race tracks, including Saratoga, pursuant to franchises granted by the Board (Racing, Pari-Mutuel Wagering and Breeding Law §§ 202, 208, 224). Capital OTB is a public benefit corporation authorized, subject to Board regulation, to offer pari-mutuel wagering on races conducted at NYRA's tracks and elsewhere (Racing, Pari-Mutuel Wagering and Breeding Law arts V, V-a).

In our view, the petition fails for a variety of reasons. Initially, we observe that the Stewards, whose determination is in issue, are not parties to this proceeding. In any event, the Stewards exercise a supervisory function as defined by the regulations of the Board *(see,* Racing, Pari-Mutuel Wagering and Breeding Law § 212; 9 NYCRR 4022.3), and in this quasi-judicial capacity they are not liable for the negligent or wrongful exercise of their duties *(see, Tango v Tulevech,* 61 NY2d 34, 39, 42; *Turcotte v Fell,* 84 AD2d 535; *Discenza v New York Racing Assn.,* 134 Misc 2d 3, 7). Notably, the named respondents have not rendered any "determination" subject to CPLR article 78 review *(see,* CPLR 7803 [3]). Petitioners maintain nonetheless that the Board, by virtue of its general jurisdiction, was responsible for the Stewards' ruling and

acted arbitrarily in refusing to review and reverse their disqualification of Allumeuse. This contention is without merit.

Pari-mutuel wagering is only authorized because of specific constitutional and statutory provisions (see, NY Const, art I, § 9; Racing, Pari-Mutuel Wagering and Breeding Law § 222). The Board is statutorily required to "make rules regulating the conduct of pari-mutuel betting" (Racing, Pari-Mutuel Wagering and Breeding Law § 227 [1]). The rules promulgated, if reasonable, are accorded the force and effect of law and must be strictly construed (see, *Molina v Games Mgt. Servs.*, 58 NY2d 523, 529; *Craft v Capital Dist. Regional Off Track Betting Corp.*, 107 AD2d 952, 954). In exercising this function, the Board has authorized the Stewards to resolve all objections concerning a race (see, 9 NYCRR 4022.16, 4039.5, 4039.20) and to declare the "official" outcome, which determines with *finality* a race result for purposes of distributing the pari-mutuel pools. The regulations provide: "Posting order of finish. When a result is *official,* that word shall be flashed on the result board and shall signify that the placing of the horse is *final insofar as the payoff is concerned.* If any change be made in the order of finish of a race after the result is so declared *official, it shall not affect the payoff.* The posting on the result board of the order of winning, place and show horses or the prices to be paid shall not be deemed to signify that such result and prices are official until the *official* signal has been shown on the result board or announced by the public address system" (9 NYCRR 4008.1 [emphasis supplied or in original]). Anticipating a situation where, as here, the Stewards reverse themselves after a race is declared official, the Board adopted 9 NYCRR 4008.4, which states: "Rulings after *official* declaration. Rulings of the stewards with regard to the award of purse money, made after the result has been declared *official,* shall in no way affect the mutuel payoff" (emphasis in original).

Thus, while the Board is the sole entity authorized to regulate horse racing and pari-mutuel activities in this State, the Stewards have been granted the final word concerning the official outcome of a race insofar as the pari-mutuel payoff is concerned. This is not to suggest that the Stewards' authority is absolute, for the Board may review nonfactual decisions of the Stewards for reasons other than the wagering outcome (see, 9 NYCRR 4039.5; part 4013; *see also, Matter of Kaufman v Sarafan,* 59 NY2d 855; *Matter of Miller v Lomenzo,* 43 AD2d

997). Notably, petitioners are not persons who could validly make objections to the Stewards' decisions under the Board's rules *(see,* 9 NYCRR 4039.10). This "rule of finality" pertains only to the pari-mutuel payoff and, given the anonymous nature of the betting transaction, is necessary to preserve the financial integrity of the pari-mutuel system *(see, Finlay v Eastern Racing Assn.,* 303 Mass 20, 30 NE2d 859). To hold otherwise would render this wagering system inoperable, for NYRA and the various off-track betting operations, as mere stakeholders, would be precluded from rendering an immediate payoff following each particular race. Such contemporaneous payoffs have been the practice for decades and are the reasonable expectation of every handicapper.

Although petitioners' disappointment is understandable, by placing their wagers they agreed to abide by the existing rules and regulations *(see, Shapiro v Queens County Jockey Club,* 184 Misc 295, 299-300; *Salmore v Empire City Racing Assn.,* 123 NYS2d 688, 692), and must have realized from the outset that there was no guarantee of winning. Significantly, petitioners do not challenge the propriety of the regulations discussed. Since the Board merely complied with its own rules of finality in refusing to overturn the Stewards' "official" disqualification of Allumeuse, its forebearance cannot be characterized as arbitrary and capricious. As such, the petition fails to state a viable claim against the Board.

The claim against NYRA and Capital OTB is even less persuasive for neither entity exercised any authority or control over the Stewards' decision.[3] The only relevant action taken by these two respondents was to distribute the pari-mutuel pools in accordance with the "official" order of finish in strict compliance with the Board's rules. A failure to so act on their part would have jeopardized their operational authority *(see,* Racing, Pari-Mutuel Wagering and Breeding Law §§ 210, 522).

Finally, it is evident that the monetary relief requested is petitioners' primary objective, and thus a CPLR article 78 proceeding is inappropriate (CPLR 7806; *see,* 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7806.01). However, we deem it unnecessary to convert this proceeding into a plenary action

---

3. NYRA designated one of the three Stewards, but cannot be deemed vicariously liable because the Stewards' office is statutory and the Board's regulations define their authority *(see,* Racing, Pari-Mutuel Wagering and Breeding Law § 212).

*(see,* CPLR 103 [c]) since petitioners have stated no cognizable cause of action against any of the respondents. Accordingly, the petition should be dismissed.

MAHONEY, P. J., KANE, LEVINE and MERCURE, JJ., concur.

Order reversed, on the law, without costs, motions granted and petition dismissed.