OPINION OF THE COURT
Edward J. Greenfield, J.
June 12, 1989 should have been a red-letter day for Roberto *644 Vaccaro. He went to an office of the Nassau Off-Track Betting Corp. (OTB) and purchased $85 worth of pari-mutuel tickets on the daily double to be run that day at Belmont Park. His choices were the C horse, Dyna Mite Mollie, in the first race, and the F horse, Jazz City, in the second. Sure enough, Dyna Mite Mollie came through and won by AVz lengths, and when Jazz City took the lead in the second race and kept it to the finish line, Vaccaro thought he was a winner. However, the Stewards ruled otherwise, and despite this lawsuit to set aside their decision, he is still a loser.
What happened is this. Vaccaro purchased his daily double tickets a few minutes before wagering closed at 1:00 p.m. The indicated payoff for the C and F horses, based on the total pool wagered, was $76 for each $2 bet. However, after the first race and before the running of the second race, there was a malfunction in the totalizator board computer between 1:47 and 1:50 p.m.; and the Stewards announced that all wagering tickets involving the second race would be canceled, although the race would be run, and that there would be a payoff on a consolation daily double of $3.20 for every $2 bet in the double on Dyna Mite Mollie coupled with any horse which ran in the second race.
Vaccaro thus was offered $136 for his $85 of tickets on the C and F horses, instead of the $3,230 he thought he had coming. Enraged, he claims to have spent 2 Vi months investigating, researching and preparing his complaint, allegedly losing sleep, and losing time with his family and on his job. Seeking $3,230 on his daily double tickets, and $9,000 for his loss of time in preparing for the suit, he has sued the New York State Racing and Wagering Board (RWB), the New York Racing Association, Inc. (NYRA), the Nassau Regional OffTrack Betting Corporation (OTB), and defendants Joyce, Gil-man and Hamilton (the Stewards), claiming that their actions in providing only for a consolation daily double was illegal and improper.
The New York State Racing and Wagering Board has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a cause of action, while the Nassau OTB cross-moves to dismiss the complaint as against it. Steward Joyce moves to dismiss OTB’s cross claim against him. The NYRA and Stewards Gilman and Hamilton move to change the venue of this action to Nassau County. All the motions are consolidated and considered together.
*645 The State RWB is part of the State Executive Department and exercises "general jurisdiction over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the state and over the corporations, associations, and persons engaged therein.” (Racing, Pari-Mutuel Wagering and Breeding Law § 101 [1]; Matter of Cramer v New York State Racing Assn., 136 AD2d 104.) It promulgates the rules for racing and betting and oversees their enforcement. It urges that as an instrumentality of the State, all claims for money damages against it must be brought only in the Court of Claims (Court of Claims Act § 9; Benz v New York State Thruway Auth., 9 NY2d 486; Graham v Stillman, 100 AD2d 893), and that as a State entity, it cannot be joined with other parties in a Supreme Court action (Siegel, NY Prac § 17 [2d ed]), so that this court lacks subject matter jurisdiction over it, and plaintiff’s complaint, and the cross claim of Nassau OTB must be dismissed as against it. While plaintiff disclaims any intention to recover a claim for monetary damages from RWB, the complaint does not seek CPLR article 78 review and alleges merely that RWB "allowed” the illegal decision of the Stewards, so no cause of action is stated in any event. While the RWB may conduct a review, if it chooses, it cannot be compelled to do so. (Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 54 NY2d 154.)
The Nassau OTB, like all off-track betting corporations, is a public benefit corporation authorized to offer and operate offtrack pari-mutuel wagering at races conducted within its region (Racing, Pari-Mutuel Wagering and Breeding Law § 502; Matter of Cramer v New York State Racing Assn., supra). It operates subject to the rules and regulations of the State board. (Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 54 NY2d 154; Seltzer v New York Racing Assn., 134 Misc 2d 1038.) Unlike the RWB, it may sue and be sued (Racing, Pari-Mutuel Wagering and Breeding Law § 503 [1]). Plaintiff purchased his daily double tickets from a Nassau OTB facility. OTB asserts that it was obliged to make payoffs on plaintiff’s wager and all others in accordance with the official posting of the results by the Stewards at the track.
It is plaintiff’s contention that all daily double bets, and the totality of the double pool, as well as the odds for each combination, became fixed before the first race was run. All betting on the daily double was closed, and since both the first *646 and second races were thereafter run, the winners declared, he argues it should make no difference that the totalizator board malfunctioned before the second race, and that all wagering on that particular race was canceled. The daily double pool being independent of any other wagering pool (Regulations for State Racing and Wagering Bd [9 NYCRR] §§ 4010.1, 4011.2), plaintiff asserts that the pool was complete, and the prices of the daily double payoffs fixed at post time of the first race, and could not be affected by any subsequent wagering on the second race, except if the race had not been run or no winner posted. Therefore, he urges, the cancellation of the daily double by the defendant Stewards was illegal, and Nassau OTB should be compelled to pay him at the posted odds.
The races conducted by NYRA are supervised by three Stewards, appointed by the RWB, the NYRA and the Jockey Club. (Racing, Pari-Mutuel Wagering and Breeding Law §212.) The Stewards exercise a supervisory function and exercise such powers as are prescribed by the New York State Racing and Wagering Board. (9 NYCRR 4022.3; Discenza v New York Racing Assn., 134 Misc 2d 3.) The Stewards have the responsibility of making all of the discretionary decisions that must be made on a day to day basis at the track.
The Stewards are empowered to resolve all objections as to the running of a race, and their judgment as to the exercise of their discretion is final (9 NYCRR 4022.16). That section provides: "The stewards have power to determine all questions arising in reference to racing at the meeting, subject to appeal to the commission.” (Emphasis supplied.) While it is true that most of the previous cases upholding decisions of the Stewards deal with their determination as to who is an official winner (see, Matter of Cramer v New York State Racing Assn., 136 AD2d 104, supra; Gardner v New York State Racing Assn., 137 Misc 2d 645), the regulations give them the power to determine all questions pertaining to racing, which would include payoffs and not merely the order of finish. While a hearing may be held as to a decision by the Stewards as to a violation of the law or regulation (§ 4022.23), there is no recourse as to wagering results, for section 4022.20 explicitly provides that "The stewards shall not entertain any disputes relating to bets.” (But see, Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 54 NY2d 154 [holding the RWB may act on its own initiative].)
Thus, while plaintiff may well be correct in his assertion *647 that the daily double pool has no connection with any other pool shown on the totalizator board (§ 4011.2), and that problems in computing the payoff for the second race should not have affected the already fixed daily double pool, the Stewards made an on-the-spot decision to the contrary, and decreed that because of the difficulties in the second race betting, there would be a consolation payoff for the daily double, even though a consolation pool is provided for only when horses are scratched from the second race (§ 4011.10) or if the second race is declared "no race” (§ 4011.8 [b]).
So, although the Stewards may have been wrong as to the daily double payoff, the problem, as frequently occurs in many sporting events, is whether primacy is to be given to correctness or to finality. A football official may rule that, in accordance with his interpretation of the rules as to when the ball is dead a touchdown has not been scored, and even though replays on the next day show that his call and his interpretation of the rules was clearly incorrect, once everybody has gone home the game is over and the result stands. Finality is even a more important consideration when dealing with betting at the races. There must be one final and determinative call, no matter what a subsequent review may show. Even a change in declaring the winner upon review cannot affect the payoff once the "official” results have been posted. (9 NYCRR 4008.1.) A bettor has no standing to challenge the steward’s decision (§ 4039.10). Racing, Pari-Mutuel Wagering and Breeding Law § 523 (1) calls for uniformity of off-track wagers with on-track wagers, and specifies that the "determination of payouts from such pool * * * shall be the same for all winning tickets.” It would be inappropriate therefore for the plaintiff to collect $76 for each of his $2 tickets when all other similarly situated bettors have received $3.20.
The Stewards who make the determination cannot be held personally liable for wrongfully exercising their judgmental duties. (Turcotte v Fell, 84 AD2d 535; Matter of Cramer v New York State Racing Assn., 136 AD2d 104, 106, supra; Discenza v New York Racing Assn., 134 Misc 2d 3, 7, supra.) They have the final word insofar as the official pari-mutuel payoff is concerned. (Matter of Cramer v New York State Racing Assn., supra, at 107.) There is no basis for a court superimposing its decision, years after the event, as to a wagering outcome. As specified in Cramer (at 108), there is a "rule of finality” with respect to pari-mutuel payoffs, for contemporaneous payoffs are the reasonable expectation of every handicapper. As is the *648 case with arbitrators who may make mistakes, " 'Purchasers of race tickets * * * consent to be bound by the judgment of those regularly charged with the duty of decision.’ ” (Finlay v Eastern Racing Assn., 308 Mass 20, 23, 30 NE2d 859, 861, cited with approval in Gardner v New York Racing Assn., 137 Misc 2d 645 [App Term, 1st Dept 1988].)
The duty of decision as to sporting events properly rests with the designated arbiters of that sport. The Court of Appeals has noted, in Mercury Bay Boating Club v San Diego Yacht Club (76 NY2d 256, 265 [1990]), that it would be most inappropriate for courts to fix the rules for a sport, and that the outcome of such contests should be decided in the sports arena, and not in the courthouse.
As for NYRA and Nassau OTB, they were required to distribute the pari-mutuel pool in accordance with the official decision as to the daily double payoff. (Racing, Pari-Mutuel Wagering and Breeding Law § 523 [1].) They assume no liability for having done so.
The claim by plaintiff that he is entitled to compensation for time and effort he expended in researching law for this case is, of course, without merit. He is to be commended for his diligent study and the effectiveness of his argument, but while there is much that can be said for the correctness of his views, an on-the-spot ruling was made to the contrary and it cannot be upset.
Accordingly, the complaint is dismissed. In view of this outcome, all cross claims are dismissed and the motion to change venue is denied as moot.