*421 OPINION OF THE COURT
Louis C. Benza, J.
This is an action for breach of contract and/or negligence which arose in connection with claimant’s purchase of a subscription to the State’s "Pick Six” lottery contest (Lotto). There is no dispute about the underlying facts insofar as they are known.
The subscription program of the New York State Lottery (the Lottery) allows individuals to select combinations of numbers which will be automatically entered in each Lotto drawing during the time period selected (15, 26 or 52 weeks) and paid for by the subscriber. According to claimant, he filled out a preprinted subscription application on May 7, 1993, indicating that he wanted, among others, the number combination 21, 26, 28, 37, 50 and 54 played over a period of 26 weeks. He also purchased a money order for $150 to pay for this subscription. Evidence of this is contained in a document which shows a copy of claimant’s application (including the receipt stub) and a United States Postal money order made out to the New York State Lottery from claimant. The subscriber receipt is dated, by hand, "5/7/93” and the code on the money order shows the same date. Claimant also states that he mailed the subscription application and money order on May 7. Although there is no documentary evidence of this fact, it is reasonable to assume that he did so. In mid-June 1993, when he had not received confirmation of his subscription, claimant called the Lottery’s subscription department and was allegedly told by Lottery employee Vincent Juliano that he should not worry, that the confirmation should arrive shortly. On July 17, 1993, the number combination of 21, 26, 28, 37, 50 and 54 were announced as the winning numbers for the Lotto Pick Six contest. The prize being awarded at that time was $10 million.
The following Monday, July 19, Bradley Siegel, an attorney and friend of claimant, called the Lottery and asked employee Ruth Santabarbara about the proper procedure to follow in claiming the prize. Siegel was told that the Lottery had no record of claimant’s subscription. Two days later, claimant’s counsel spoke with Vincent Juliano, who confirmed that the computer showed no current subscription for claimant. On July 28, 1993, claimant received the regular confirmation of his subscription, which indicated that his application had been processed on July 23, 1993 and that the chosen combination of *422 numbers would be played for 26 weeks beginning on August 7, 1993.
The Lottery officials mentioned above have provided affidavits in support of this motion. Vincent Juliano confirms that on or about July 19, 1993 he was contacted by claimant or someone acting on his behalf and informed the caller that the computer file showed no current subscription in claimant’s name. Juliano also states that the application and money order described by claimant as having been sent on May 7, 1993 was received by the Lottery on July 21, 1993, as indicated by a date stamp placed on the application form.[2] Juliano states that such applications are usually processed and entered into the Lottery’s computer files within one to two days of receipt, and a confirmation was sent to claimant on July 27, 1993. Juliano’s affidavit contains no reference to a June 1993 conversation with claimant. In her affidavit, Santabarbara confirms the July 19 conversation with Siegel and includes a copy of the computer printout which she ran on that date. This document shows that claimant had previously had a 26-week subscription, beginning on November 4, 1992 and ending May 1, 1993, but lists no other subscription.
The court notes that the subscriber receipt form retained by claimant contains the following statement: "Allow approximately 4 weeks for processing. A confirmation notice will be mailed in advance of the start date of your subscription.” In addition, instructions on the back of the subscription application form include the following:
"Lotto Subscription Confirmation Notice
"Allow approximately four weeks for your application to be processed.
"When your application is processed, a confirmation notice will be issued indicating the start date and the numbers you have selected.
"You’ll also be notified when your subscription is about to expire so you can sign up in time to continue playing.”
DISCUSSION
Counsel for defendant moves for summary judgment dismissing the claim on two grounds: (1) that the claim is barred *423 by sovereign immunity and (2) that the State had no duty (contractual or otherwise) to pay claimant the proceeds of the July 17, 1993 Lotto drawing because the conditions of play had not been met. The court does not agree that any and all actions performed by the State in connection with operation of the Lottery are insulated by sovereign immunity simply because the Legislature failed to expressly waive such protection or because "no court has ever held that the State’s limited waiver of sovereign immunity applies to Lottery operations”.[3] Even if operation of the Lottery is viewed as a purely governmental activity, there are recognized exceptions to the immunity accorded such endeavors (see, Boland v State of New York, 161 Misc 2d 1019 [Benza, J.]).
On the other hand, the rules and regulations governing operation of the Lottery contain provisions which so severely limit a player’s remedy in the event of disputes about winning tickets as to effectively immunize the State from liability in this regard. 21 NYCRR 2817.5 provides as follows: "Disputes: In the event a dispute occurs between the Lottery and/or the contractors and the player as to whether a ticket is a winning ticket, and if the ticket prize is not paid, the director may, if he considers there is no doubt, refund the entry cost of the panels played by the player on that ticket. This shall be the sole and exclusive remedy of the player of the ticket.” When a prize is paid to a player, even if the player contends that he or she was entitled to a larger amount, the State and its agents are discharged of liability by 21 NYCRR 2803.6 (see, Craft v Capital Dist. Regional Off Track Betting Corp., 107 AD2d 952, 954). The State’s insulation from liability, therefore, is virtually complete.
The Court of Appeals has held that Lottery players are bound by the administrative rules regulating authorized gambling, including rules exempting the State and its agents from liability on disputed ticket claims (Molina v Games Mgt. Servs., 58 NY2d 523, 528-529; Fujishima v Games Mgt. Servs., 110 Misc 2d 970). In Molina, a player purchased a Lottery ticket at a donut shop and marked it with the combination of numbers subsequently picked in the weekly drawing. However, the original of her ticket was not delivered by the sales agent to Lotto Central, headquarters of the private firm which operated the Lotto contest at that time. Pursuant to the *424 regulations then in force, no ticket could be deemed a winning ticket unless it was delivered to and microfilmed at Lotto Central prior to the drawing. 21 NYCRR former 2817.11 provided, in relevant part: "The liability of the Contractor, the State and the lotto Sales Agents is limited to a refund of the amount wagered if a ticket is not accepted by the Contractor on behalf of the State, regardless of whether said liability arises through neglect, omission, failure or otherwise on the part of an Agent or the Contractor. ” The Court of Appeals found that this exemption of liability was reasonable in view of the nature and purpose of the State Lottery, the disruption that would be caused by disputes with disappointed players, and the resources that would be consumed in excessive and protracted litigation (Molina v Games Mgt. Servs., supra, at 529; see also, Matter of Caplan v New York State Dept. of Taxation & Fin., 32 NY2d 134, 138-139). The same reasoning applies with equal, if not greater, force to the regulation in question here, and the same outcome is required.
Even if there were no such regulatory protection for the State, it appears that claimant’s cause of action must fail as a matter of law. Both the contract and negligence theories of liability flow from the fact, which is alleged only "Upon information and belief’, that the Lottery received claimant’s subscription application "in or about May 1993” and from the inference that failure to process that application before the July 17 drawing could only have been caused by ministerial error. Even if claimant were able to establish these facts beyond any doubt and to overcome the limitation on his remedy discussed above, other rules and regulations would appear to prevent recovery.
21 NYCRR 2817.16 provides:
"Valid subscription entry, (a) To be a valid entry, a subscription must meet the following requirements:
"(1) The application and game numbers selected by the player must be entered on the appropriate Lottery computer file, which is the official record of subscription entry.
"(2) A membership confirmation is issued to the subscriber containing the game panels, game numbers, subscription start date and subscription end date, as recorded on the Lottery computer file of subscription records.”
It is undisputed that claimant’s application was not entered into the Lotto computer file when the July 17, 1993 drawing *425 occurred, and no membership confirmation had been issued to him at that time.
The statements contained on the Lottery subscription application suggesting that applications are normally processed within four weeks do not create a binding agreement or promise because it would conflict with the governing regulation requiring entry into the computer file before a subscription is considered valid.[4] In Craft v Capital Dist. Regional Off Track Betting Corp. (107 AD2d 952, 953, supra), the Third Department held that a Lottery player was not entitled to an alternate prize of one half the regular first prize money although the "bet slip” he received and a poster issued by the Lottery both indicated that would be the prize. Prior to the drawing, the relevant rules and regulations had been changed to authorize an award of only 20% of the regular first prize money, and the regulations in effect at the time the prize was awarded were held to be binding on both the agency and any person affected "notwithstanding reliance upon erroneous information provided by a government instrumentality, i.e., defendant” (supra, at 954).[5]
In the instant case, the Lottery did not pay the prize which claimant contends that he won, and thus the State’s liability to him is limited by 21 NYCRR 2817.5. Even if there were no such limitation on the State’s liability, claimant did not have a valid subscription entry for the July 17, 1993 Lotto drawing and thus could not be entitled to the winnings.
Defendant’s motion is granted and the claim is dismissed.

. Apparently the Lottery’s main office moved from Albany to Schenectady around the time claimant mailed his subscription application, which undoubtedly contributed to the delay in its receipt.

. This argument was raised by the State, but not ruled on by the Third Department, in Peri v State of New York (66 AD2d 949, affd 48 NY2d 734).

. There is no regulation requiring subscription applications to be processed within a particular time period after receipt by the Lottery.

. As indicated above, the court also noted that, by accepting the smaller prize, the ticketholder had, in fact, discharged the State of any and all liability (21 NYCRR 2803.6; Craft v Capital Dist. Regional Off Track Betting Corp., 107 AD2d, supra, at 954).